IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

```
                           *
JEFFREY B. COHEN,
                           *
        Plaintiff,
                           *
        v.                             CIVIL NO.: WDQ-14-0768
                           *
INS CONSULTANTS, INC.,
et al.,                    *

        Defendants.        *

                           *
*    *    *    *    *    *    *    *    *    *    *    *    *
```

## MEMORANDUM OPINION

Jeffery B. Cohen, *pro se*, sued INS Consultants and 21 others, for claims relating to a Delaware receivership. Pending are 20 motions, including five motions to dismiss the original complaint, a motion to strike the amended complaint, 12 motions to dismiss the amended complaint, a motion by 18 of the defendants for sanctions against Cohen, and Cohen's motion to stay civil proceedings. No hearing is necessary. Local Rule 105.6 (D. Md. 2011). For the following reasons, the motion to strike will be denied; the motions to dismiss the original complaint will be denied as moot; the motions to dismiss the amended complaint will be granted because the Court lacks subject matter jurisdiction; and Cohen's motion to stay will be denied as moot.

I.   Background[1]

A. The Employment Agreement and the Cohen Entities

Indemnity Insurance Corporation, RRG ("IIC") is a risk
retention group founded by Cohen and domiciled in Delaware. *See
Cohen* at 68, 70.  IIC "shares its offices with at least
seventeen Cohen-affiliated entities, which are intertwined, have
complicated financial relationships with each other, and share
employees and equipment." *See id*. at 70.  IDG Companies, LLC
("IDG") is an affiliated company owned by Cohen, which acted as
IIC's "managing general agent."[2] *See id*. at 68, 70.  Before
April 2012, IDG and its employees performed the day-to-day
operations of IIC. *See id*. at 70.  In April 2012, IDG stopped

---

[1] The facts are taken from the proposed amended complaint (ECF
No. 44), the parties' filings, and the Delaware state court
opinions about the receivership.

On a motion to dismiss, the well-pled allegations in the
complaint are accepted as true. *Brockington v. Boykins*, 637
F.3d 503, 505 (4th Cir. 2011).  The Court may consider the
pleadings, matters of public record, and documents attached to
the motions that are integral to the complaint and whose
authenticity is not disputed. *See Philips v. Pitt Cnty. Mem'l
Hosp*., 572 F.3d 176, 180 (4th Cir. 2009).

An exceedingly detailed factual background of the
receivership proceedings is available in the opinion by the
Supreme Court of Delaware. *Cohen, et al. v. Delaware, ex rel.
Stewart, et al*., 89 A.3d 65 (Del. 2014) (hereinafter "*Cohen*").

[2] Under Delaware law, "managing general agent" is "any person,
firm, association or corporation who negotiates and binds ceding
reinsurance contracts on behalf of an insurer or manages all or
part of the insurance business of an insurer (including the
management of a separate division, department or underwriting
office) and acts as an agent for such insurer . . . ."  18 Del.
C. § 1802(3).

performing operational services for IIC, and IDG employees were transferred to IIC. *See id.*

In January 2012, "Cohen executed an employment agreement with himself in which he named himself the 'President/Chief Executive Officer' of several of his entities and established the terms of his employment with" IIC and IDG. ECF No. 41-1 at 6; *see* ECF No. 1-2 ("Employment Agreement").[3] "In exchange for his services, Cohen . . . agreed to pay himself: an annual salary of one million, three hundred thousand dollars ($1,300,000.00) for his agency management services; plus an additional amount up to seven hundred thousand dollars ($700,000.00) for his carrier management services, payable to Cohen upon his request; plus an annual bonus of up to 150% of his total salary, based on the 'level which the annual net underwriting income target is . . . [] reached or exceeded.'" ECF No. 41-1 at 6; Employment Agreement at ¶¶ 6.A-6.B.[4] The Employment Agreement was for a ten-year period, during which Cohen could only be terminated "for cause."[5] ECF No. 44 at 13.

---

[3] Cohen attached the Employment Agreement to his original complaint. Although he refers to the agreement and its terms in the amended complaint, it is not attached as an exhibit.

[4] The agreement also stated that the companies would pay many of Cohen's expenses. *See* Employment Agreement at ¶¶ 6.C-6.D.

[5] The Employment Agreement defined "for cause" as "upon death of [Cohen]; [u]pon notice from [the Cohen Entities] to [Cohen] in the event of an illness or other disability which has totally

B. The DOI Investigation and Receivership

In July 2012, the Delaware Department of Insurance ("DOI") "began a routine regulatory examination" of IIC. *See Cohen* at 70. After the DOI uncovered concerns about IIC's solvency, DOI Commissioner Karen Stewart applied to the Delaware Court of Chancery for a Seizure Order. *See Cohen* at 71-74. On May 30, 2013, the Delaware Court of Chancery[6] issued a Confidential Seizure and Injunction Order vesting Commissioner Stewart with the title to all IIC property. *See id.* at 72. The Seizure Order was enrolled in Maryland. *See* ECF No. 88 at 6.

On September 10, 2013, the Delaware Court of Chancery amended the Seizure Order after the IIC presented evidence that "Cohen interfered with the Commissioner's investigation and ability to run [IIC] in a variety of ways." *See Cohen* at 75. On September 13, 2013, three IIC employees became aware of unauthorized activity in their deferred-compensation Fidelity Accounts. *See id.* at 76-79. Cohen was the only person with access to the accounts, which were held in IDG's name. *See id.* The stock in the accounts had been sold and converted to cash,

---

and permanently disabled him from performing his duties for six consecutive months as determined in good faith by the Board of Directors; if at any time [Cohen] is found guilty by a court of law of an act of embezzlement; or has failed to perform any of his assigned duties; or the voluntary resignation of [Cohen]." Employment Agreement at ¶ 3; ECF No. 44 at 13.

[6] Defendant Vice Chancellor J. Travis Laster was the judge who oversaw the Chancery proceedings. *See* ECF No. 74-2 at 9.

and the employees were concerned that Cohen was preparing to withdraw the funds. *See id*. The employees contacted the Insurance Department, and Commissioner Stewart froze the three accounts before they could be emptied, and the Delaware Court of Chancery ordered sanctions. *See id*.

In October 2013, Cohen filed suit in Maryland,[7] which violated the amended Seizure Order. *See id*. at 81-82. On November 1, 2013, the Delaware Court of Chancery ordered additional sanctions. *See id*.

On November 6, 2013, Commissioner Stewart filed a Petition for the Entry of a Rehabilitation and Injunction Order with consent of IIC's board. *See Cohen* at 84. On November 7, 2013, the Delaware Court of Chancery entered the Order, placing IIC into receivership and appointing the Commissioner as the receiver. *See Cohen* at 85-86. On April 10, 2014, after it became clear that attempting to rehabilitate IIC would be futile, the Delaware Court of Chancery issued a Liquidation Order. *See* ECF No. 74 at 12. "Under the Liquidation Order, the Receiver is required to terminate IIC's insurance business and marshal IIC's assets for liquidation and distribution." *See id*.

"The Seizure Order, the Rehabilitation Order and the Liquidation Order . . . each authorized the Commissioner to

---

[7] One of the cases was subsequently removed to federal court. *See* Cohen v. Bankers Standard Ins. Co., 14-cv-0313 (D. Md.) (Motz, J.).   However, it does not affect this litigation.

appoint personnel to examine, oversee and manage the day to day operations" of IIC.  ECF No. 41-1 at 6.  The Commissioner appointed INS Consultants, Inc. and INS Regulatory Insurance Services, Inc.[8]  *See id.*

Cohen appealed the Court of Chancery's rulings to the Supreme Court of Delaware.  *See id.*  Cohen also asserted that the rehabilitation proceedings had deprived him of due process of law.  *See Cohen* at 68-70; 86-87.  The Supreme Court of Delaware rejected Cohen's arguments and affirmed the Court of Chancery's rulings.  *See id.* at 70.

C. Procedural History

1. The Original Suits

Between March and April, 2014, Cohen filed three suits in the U.S. District Court for the District of Maryland relating to the receivership.  On March 4, 2014, Cohen sued DOI Commissioner Stewart, DOI Deputy Commissioner Eugene Reed, Jr., Deputy Attorney General ("DAG") W. Harding Drane, Jr., and Deputy Attorney General Jessica Willey (collectively, "the DE State Defendants").[9]  *See Cohen v. Stewart,* 14-cv-0611 (D. Md.).  On March 13, 2014, Cohen initiated this action against 13

---

[8] Defendants Gregg Bealuk and Michael Johnson are officers of these appointees.

[9] DAG Drane and DAG Willey are the counsel of record for Commissioner Stewart in the proceedings pending against Cohen.

defendants.[10]   ECF No. 1.   On April 1, 2014, Cohen sued Diane
Krause, the managing director of a company that did business
with IIC for defamation.[11]   *See Cohen v. Krause*, 14-cv-1004 (D.
Md.).

Cohen faced motions to dismiss and/or for summary judgment
in all three cases.   On May 29, 2014, Cohen filed an amended
complaint in this action.   ECF No. 44.   The amended complaint
added Krause, the DE State Defendants, and five new defendants.[12]
*See id*.   On June 17, 2014, Cohen moved to voluntarily dismiss
the *Stewart* and *Krause* actions.   Both cases were closed.

---

[10] Cohen sued INS Consultants, Inc., INS Regulatory Insurance
Services, Inc., Gregg Bealuk, Michael Johnson (collectively, the
"INS Defendants"); Entertainment Risk, LLC (a business
associated with IIC); David Koehler, Paul Hoffman, Francis
Nerney, Sean Wright, Philip Metcalf, Christian Lodowski
(collectively, the "IIC Employee Defendants"); Michael Teichman
(IIC's attorney during the receivership proceedings); and RMS
Insurance Brokerage, LLC (a business associated with IIC).   ECF
No. 1.   RMS Insurance was never served in this case with either
the original or amended complaint, and has not entered an
appearance.   *See* ECF No. 7.

[11] Cohen alleged that Krause made defamatory comments about Cohen
being a "crook" in an email relating to the receivership
proceedings.   *See Cohen v. Krause*, 14-cv-1004 (D. Md.) (Dkt. 1).

[12] The new defendants were Vice Chancellor Laster, J. Van Lear
Dorsey (principal counsel to the Maryland Insurance
Administration), Michael Arrington, Jacinto Ayala, and the
Princeton Excess and Surplus Lines Insurance Co.   ECF No. 44.

### 2. The Amended Complaint

The amended complaint alleges nine causes of action. Cohen alleges that Commissioner Stewart, Deputy Commissioner Reed, the INS Defendants, and Koehler "willfully conspired, interfered, and violated" Cohen's employment agreement and two leases between Cohen and IIC. ECF No. 44 at 33 (Count I: Breach of Contract). Cohen alleges that Lodowski, Nerney, Wright, and Krause defamed Cohen's character. *Id*. (Count II: Defamation). Cohen alleges that Arrington, Teichman, Lodowski, Metcalf, and Koehler engaged in deceit and negligent misrepresentation by "knowingly conspire[ing] amongst themselves and intentionally act[ing] to harm [Cohen]." *Id*. at 34 (Count III). Cohen alleges that Vice Chancellor Laster, Teichman, Arrington, DAG Drane, DAG Willey, Commissioner Stewart, and INS Regulatory Insurance Services violated 42 U.S.C. § 1981, and that Teichman, Arrington, DAG Drane, and DAG Willey violated 42 U.S.C. §§ 1982-83. *Id*. at 34-35 (Counts IV-V).

Next, Cohen alleges that all of the Defendants violated 42 U.S.C. §§ 1985-86 (Civil Rights Act) and committed RICO violations under 18 U.S.C. § 1962. *Id*. (Counts VI-VII). Cohen alleges that Van Dorsey, Koehler, DAG Drane, DAG Willey, Commissioner Stewart, Deputy Commissioner Reed, Teichman, and Arrington committed "malicious abuse of process, negligent misrepresentation, and negligent misrepresentation by omission."

*Id.* at 36 (Count VIII).  Finally, Cohen alleges that Commissioner Stewart and Deputy Commissioner Reed harmed Cohen through an unconstitutional delegation of their statutory authority.  *Id.* (Count IX).

II.  Analysis

    A.  Legal Standards

        1. Amending a Complaint

Fed. R. Civ. P. 15(a)(1) allows a party to "amend its pleading once as a matter of course" within "21 days after serving it" or, "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."  All other amendments may be made "only with the opposing party's written consent or the court's leave."  Rule 15(a)(2).

Federal Rule of Civil Procedure 15(a)(2) instructs that leave to amend should be freely given when justice requires. Leave should be denied only when amendment would unduly prejudice the opposing party, amount to futility, or reward the movant's bad faith.  *Steinburg v. Chesterfield Cnty. Planning Comm'n*, 527 F.3d 377, 390 (4th Cir. 2008); *Equal Rights Ctr. v. Niles Bolton Associates*, 602 F.3d 597, 603 (4th Cir. 2010).

2. Subject Matter Jurisdiction

Federal district courts have "only the jurisdiction authorized them by the United States Constitution and by federal statute." *See United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir.2009) (*citing Bowles v. Russell*, 551 U.S. 205, 212 (2007)). Generally, our subject matter jurisdiction in civil suits is limited to those in which: (1) there is complete diversity of citizenship between the parties; and/or (2) a federal question has been raised. *See* 28 U.S.C. §§ 1331 (federal question) & 1332 (diversity); *see also Rayner v. Smirl*, 873 F.2d 60, 63 (4th Cir.1989) (in the absence of diversity jurisdiction, a federal district court may only exercise subject matter jurisdiction if it has been presented with a properly pled federal question).

The plaintiff bears the burden of proving subject matter jurisdiction. *Piney Run Pres. Ass'n v. Cnty. Comm'rs of Carroll Cnty.*, 523 F.3d 453, 459 (4th Cir. 2008). A motion under Federal Rule of Civil Procedure 12(b)(1) should be granted "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir.1991). If the plaintiff fails to allege any set of facts upon which the court may base

10

jurisdiction, the motion must be granted. *See Jadhav*, 555 F.3d at 347.

### 3. Failure to State a Claim

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief may be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

11

(2009) (*quoting Twombly*, 550 U.S. at 557).  The complaint must

not only allege but also "show" that the plaintiff is entitled

to relief.  *Id*. at 679 (internal quotation marks omitted).

"Whe[n] the well-pleaded facts do not permit the court to infer

more than the mere possibility of misconduct, the complaint has

alleged—but it has not shown—that the pleader is entitled to

relief."  *Id*. (internal quotation marks and alteration omitted).

    B.    Entertainment Risk's Motion to Strike the Amended
           Complaint

    Entertainment Risk argues that the Court should strike the

amended complaint because Cohen filed it more than 21 days after

Entertainment Risk's motion to dismiss.[13]  *See* ECF No. 87 at 1.

Under Federal Rule of Civil Procedure 15(a)(2), leave should be

denied only when amendment would unduly prejudice the opposing

party, amount to futility, or reward the movant's bad faith.

*Steinburg v. Chesterfield Cnty. Planning Comm'n*, 527 F.3d at

390.

    Here, discovery has yet to begin; however, the Court is

concerned that Cohen used the amended pleading to consolidate

multiple cases in which there were outstanding motions and

filing deadlines.  Further, many of Cohen's new claims are

meritless.  However, because the Court is able to resolve all of

---

[13] On April 24, 2014, Entertainment Risk filed its Rule 12(b)(6)
motion against the original complaint.  ECF No. 28.  Cohen filed
the amended complaint on May 29, 2014.  ECF No. 44.

the outstanding motions in this case, it will exercise its
discretion to permit the amended complaint.[14]   Accordingly, the
Court will deny Entertainment Risk's motion to strike the
amended complaint.

    C.    Cohen's Claims Against DE State Defendants, INS
        Defendants, and Vice Chancellor Laster Regarding the
        Receivership Proceedings

Many of Cohen's claims are an attempt to collaterally
attack state court proceedings and to interfere with the
Delaware receivership.  The various Defendants associated with
these proceedings argue that the Court does not have
jurisdiction over these claims under the Eleventh Amendment,
and, even if the Court has jurisdiction, it should abstain.
*See, e.g.*, ECF No. 74 at 1.

    1.    The Eleventh Amendment

The Eleventh Amendment provides that, "[t]he Judicial power
of the United States shall not be construed to extend to any
suit in law or equity, commenced or prosecuted against one of
the United States by Citizens of another State, or by Citizens

---

[14] "It is well settled that an amended pleading supersedes the
original pleading, and that motions directed at superseded
pleadings are to be denied as moot."  *Blount v. Carlson Hotels*,
3:11CV452-MOC-DSC, 2011 WL 6098697, at *1 (W.D.N.C. Dec. 6,
2011) (*citing Young v. City of Mount Ranier*, 238 F.3d 567, 573
(4th Cir. 2001) ("The general rule . . . is that an amended
pleading supersedes the original pleading, rendering the
original pleading of no effect.")).  Accordingly, the Court will
deny the motions to dismiss the original complaint as moot.

or Subjects of any Foreign State." U.S. Const. amend. XI.[15]
"[T]he essence of the immunity is that the State cannot be sued
in federal court at all, even where the claim has merit, and the
importance of immunity as an attribute of the States'
sovereignty is such that a court should address that issue
promptly once the State asserts its immunity." *Constantine*, 411
F.3d at 482 n.4. Further, a state's sovereign immunity extends
to individual state officials sued in their official capacities.
*Lapides v. Bd. Of Regents of the Univ. Sys.of Ga.*, 535 U.S. 613,
617 (2002).

There are several exceptions to the Eleventh Amendment bar.
*Equity in Athletics, Inc. v. Dep't of Educ.*, 639 F.3d 91, 107
n.13 (4th Cir. 2011). The U.S. Supreme Court has held that the
Amendment does *not* prevent private individuals from bringing
suit against state officials for prospective or declaratory
relief for ongoing violations of federal law.[16] The *Ex parte*

---

[15] Although, by its express terms, the Eleventh Amendment applies
only to suits brought against a state by "Citizens of another
State," the U.S. Supreme Court has held that "an unconsenting
State is immune from suits brought in federal courts by her own
citizens as well." *Gray v. Laws*, 51 F.3d 426, 430 (4th Cir.
1995) (internal quotation marks omitted).

[16] *See Ex parte Young*, 209 U.S. 123 (1908); *Litman v. George
Mason Univ.*, 186 F.3d 544, 549-50 (4th Cir. 1999); *see also
Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645
(2002) (a court examining the *Ex parte Young* doctrine must
conduct "a straightforward inquiry into whether [the] complaint
alleges an ongoing violation of federal law and seeks relief

*Young* exception is directed at "officers of the state [who] are clothed with some duty in regard to the enforcement of the laws of the state, *and* who threaten and are about to commence proceedings . . . to enforce against parties affected [by] an unconstitutional act." *Id.* at 155-56 (emphasis added). Thus, for the exception to apply, there must be a "special relation" between the officer being sued and the challenged statute. *Id.* at 157. This requirement of "*proximity to* and *responsibility for* the challenged state action" is not met when an official merely possesses "[g]eneral authority to enforce the laws of the state."[17]

Here, it does not matter that Cohen has styled his claims against the DE State Defendants, INS Defendants,[18] and Vice Chancellor Laster as against them in their "individual capacities." "[T]he mere incantation of the term 'individual capacity' is not enough to transform an official capacity action into an individual capacity action." *Lizzi v. Alexander*, 255 F.3d 128, 137 (4th Cir. 2001); *overruled on other grounds by*

---

properly characterized as prospective" (alteration in original) (internal quotation marks omitted)).

[17] *S.C. Wildlife Fed'n v. Limehouse*, 549 F.3d 324, 332-33 (4th Cir. 2008) (alteration and emphasis in original) (internal quotation marks omitted).

[18] Although the INS Defendants are private companies and individuals, they were acting here as an appointee of the Commissioner under the Court of Chancery's orders.

*Nev. Dep't. of Human Res. v. Hibbs*, 538 U.S. 721, 746 (2003).

The only fair reading of the amended complaint is that the DE

State Defendants, INS Defendants, and Vice Chancellor Laster

were acting in their official capacities.[19]  Because Delaware has

not waived its sovereign immunity,[20] the claims against these

Defendants must be dismissed.

    2.   Absolute Judicial Immunity

    "It is well-established that judges enjoy judicial immunity

from suits arising out of the performance of their judicial

functions." *Brookings v. Clunk*, 389 F.3d 614, 617 (6th Cir.

2004) (*citing Pierson v. Ray*, 386 U.S. 547, 553-54 (1967) and

*Mann v. Conlin*, 22 F.3d 100, 103 (6th Cir. 1994)).[21]  By

contrast, a judge is not entitled to judicial immunity for

performing "nonjudicial actions" or acting, although in a

judicial capacity, "in the complete absence of all

jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991).

---

[19] *See Lizzi*, 255 F.3d at 137; *Bender v. Williamsport Area Sch.
Dist.*, 475 U.S. 534, 543 (1986).  Moreover, Cohen is requesting
monetary, not declaratory, relief, which supports the conclusion
that he is truly suing these defendants in their official
capacities. *See Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir.
1995).

[20] *See, e.g.*, Del. Const. art. I § 9.

[21] *See also* 42 U.S.C. § 1983 ("[I]n any action brought against a
judicial officer for an act or omission taken in such officer's
judicial capacity, injunctive relief shall not be granted unless
a declaratory decree was violated or declaratory relief was
unavailable.").

"[W]hether an act by a judge is a 'judicial' one relate[s] to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978).

Here, both factors indicate that Vice Chancellor Laster acted in a judicial capacity when he oversaw the receivership. Further, there are no allegations in the amended complaint which would allow a reasonable jury to conclude that Vice Chancellor Laster exceeded his judicial authority.  Accordingly, the claims against Vice Chancellor Laster are barred by absolute judicial immunity.

    3.   Abstention

The DE State Defendants and INS Defendants also argue that the Court should abstain from exercising jurisdiction in this case under the abstention doctrines in *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), and *Younger v. Harris*, 401 U.S. 37 (1971). *See* ECF No. 88-1 at 20; ECF No. 89-1 at 21.

"Abstention doctrines constitute extraordinary and narrow exceptions to a federal court's duty to exercise the jurisdiction conferred on it." *Martin v. Stewart,* 499 F.3d 360, 363 (4th Cir. 2007) (*quoting Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728 (1996)) (internal quotation marks omitted). Abstention is not a "license for free-form *ad hoc* judicial

17

balancing of the totality of state and federal interests in a case." *Id.* at 364.   Rather, the Courts must consider whether a specific abstention doctrine applies.   *Id.*

Under the *Burford* abstention doctrine, when adequate state review is available, a federal court "should decline to interfere with the proceedings or orders of state administrative agencies" when (1) "there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case," or (2) when federal review "would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."   *See New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989) (internal quotation marks omitted).

The Fourth Circuit has recognized that *Burford* abstention may be appropriate in receivership proceedings.   *See First Penn-Pacific Life Ins. Co. v. Evans*, 304 F.3d 345, 349-50 (4th Cir. 2002).   "[T]he liquidation process in particular is one which will be greatly impeded by the involvement of more than one decision-making authority.   And it is a critical reason why federal courts have frequently abstained to avoid interfering with state receivership proceedings."   *See id.* (internal citations and quotation marks omitted).   Accordingly, the

18

pending receivership proceedings in this case weigh in favor of
*Burford* abstention.

The *Younger* abstention doctrine does not permit a federal
court to exercise its jurisdiction over an action which asks it
to interfere in state proceedings when:  (1) there are ongoing
state proceedings which (2) implicate important state interests,
and (3) the federal plaintiff will have an adequate opportunity
to raise federal claims in the state proceedings.  *Moore v. City
of Asheville*, 396 F.3d 385, 390 (4th Cir 2005) (*citing Middlesex
Cnty. Ethics Coram. v. Garden State Bar Ass'n*, 457 U.S. 423, 432
(1982)).  *Younger* abstention is applicable to criminal and
noncriminal judicial proceedings when important state interests
are involved.  *See Martin Marietta Corp. v. Md. Com'n on Human
Relations*, 38 F.3d 1392, 1397 (4th Cir. 1994).

First, because the IIC Receivership proceedings are pending
in Delaware Chancery Court, the first element of the *Younger*
abstention doctrine is met in this case.  Second, Delaware has
an important state interest in regulating the insurance industry
and protecting the interests of policyholders and creditors from
delinquent insurers.[22]

---

[22] *See Charleston Area Medical Ctr., Inc. v. Blue Cross & Blue
Shield Mut. Of Ohio, Inc.*, 6 F.3d 243, 250 n.5 (4th Cir. 1993)
(complex statutory scheme for the regulation of the state's
insurance industry involves policy issues of substantial state
interest); *Fuller v. Bartlett*, 894 F. Supp. 874, 879 (D. Md.

Third, Cohen has been able to raise constitutional challenges in the Delaware proceedings. *See Cohen* at 68-70 (Supreme Court of Delaware's opinion addressing Cohen's claim that the proceedings in the Court of Chancery violated his due process rights). In evaluating the adequacy of state proceedings, the plaintiff bears the burden of demonstrating inadequacy. *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 16 (1987). Cohen has not presented any evidence demonstrating that the Delaware courts are inadequate for addressing his constitutional claims. Accordingly, all the *Younger* considerations counsel abstention.

D.   The Other Federal Claims

1. Cohen's Claims under 42 U.S.C. § 1981, § 1982, § 1985, and § 1986.

Counts IV, V, VI of Cohen's amended complaint fail to state a claim upon which relief can be granted.

42 U.S.C. § 1981 prohibits racial discrimination in the enforcement of contracts. Section 1982 is also limited to racial discrimination. *See Lee v. Minnock*, 417 F. Supp. 436, 439 (W.D. Pa. 1976). To state a claim for racial conspiracy under § 1985(3), Cohen must allege (1) a conspiracy of two or more persons, (2) *motivated by invidiously discriminatory class-based animus*, (3) to deprive him of the equal enjoyment of his

1995) (state's interest in regulating insurance strongly favors *Younger* abstention).

rights, (4) which results in injury, and (5) as a consequence of an overt act committed by the defendants. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011); *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995).[23]

Cohen has failed to allege that the actions of any of the Defendants were motivated by racial or class-based discriminatory animus.  Cohen only states that the Defendants somehow formed a vast conspiracy against him because he supported and voted for Commissioner Stewart's opponent in an election.  *See* ECF No. 44 at 22.  Cohen has not shown his membership in a protected class under any of these statutes. *See, e.g., Duane v. Gov't Emps. Ins. Co.*, 784 F. Supp. 12091216 (D. Md. 1992).  Accordingly, the Court will grant the Defendants' motions to dismiss these counts.

> 2. Cohen's 42 U.S.C. § 1983 Claim

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege 'the violation of a right secured by the Constitution or laws of the United States and must show that the alleged deprivation was committed by a person acting under the color of

---

[23] "Moreover, the plaintiff 'must show an agreement or a meeting of the minds by the defendants to violate the plaintiff's constitutional rights.'"  *A Society Without a Name*, 655 F.3d at 346 (quoting *Simmons*, 47 F.3d at 1377).  This is a "relatively stringent" standard.  *Simmons*, 47 F.3d at 1377; *see also Lewin v. Cooke*, 95 F. Supp. 2d 513, 525 (E.D. Va. 2000) ("Because of the high threshold that a Plaintiff must meet to establish a prima facie case under section 1985, courts often grant motions of dismissal.").

state law." *Holland v. Taylor*, 604 F. Supp. 2d 692, 698 (D.

Del. 2009).  Here, not only is the amended complaint devoid of

any allegations that Teichman or Arrington acted under color of

state law, or that "a causal relation exists" between Cohen's

political actions and any actions by Teichman or Arrington.  *See*

*Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686 (4th Cir.

2000).  Because Cohen has failed to plead any substantive

violation of a right secured by the Constitution, his § 1983

claim must be dismissed.

### 3. The RICO Claims

Cohen's RICO claims lack any merit.  "To state a claim for

a substantive violation of RICO, the complaint must set forth

facts that, if proven, would establish: '(1) conduct (2) of an

enterprise (3) through a pattern (4) of racketeering activity.'"

*Swarey v. Desert Capital REIT, Inc.*, No. DKC 11-3615, 2012 WL

4208057, at *11 (D. Md. Sept. 20, 2012) (quoting *Morley v.*

*Cohen*, 888 F.2d 1006, 1009 (4th Cir. 1989)).

In relation to his RICO claim, Cohen only states that

"[t]he Defendants through their conduct detailed above and below

conspired, conducted, and participated, directly and indirectly,

in the conduct of the affairs of an enterprise through a pattern

of racketeering activity . . . ."  ECF No. 44 at 26.  Such

conclusionary allegations are insufficient to support a RICO

claim.  An "enterprise" under RICO "includes any individual,

partnership, corporation, association, or other legal entity,
and any union or group of individuals associated in fact
although not a legal entity." 18 U.S.C. § 1961(4). "The
enterprise is an entity, . . . a group of persons associated
together for a common purpose of engaging in a course of conduct
. . . [and] is proved by evidence of an ongoing organization,
formal or informal, and by evidence that the various associates
function as a continuing unit." *United States v. Turkette*, 452
U.S. 576, 583 (1981). Even reading the amended complaint in the
light most favorable to Cohen, no reasonable juror could
conclude that a RICO enterprise or conspiracy existed.
Accordingly, the RICO claims will be dismissed.

    E.   The State Claims

    The only remaining claims in the amended complaint are
state law claims only tangentially related to the Delaware
receivership. Further, as apparent from the amended complaint,
there is not complete diversity of the parties.[24] *See* SCR No. 44
at 4; *Cent. W. Va. Energy Co. v. Mountain State Carbon, LLC*, 636

---

[24] In the amended complaint, Cohen asserts the residence and not
the state citizenship of many of the Defendants. ECF No. 44 at
4. For the purposes of diversity jurisdiction, citizenship, not
residency, controls. *See Johnson v. Advance Amer.*, 549 F.3d
932, 937-38 (4th Cir. 2008); *Piney Run Pres. Ass'n v. Cnty.
Comm'rs of Carroll Cnty.*, 523 F.3d 453, 459 (4th Cir. 2008)
(plaintiff bears the burden of proving subject matter
jurisdiction). It is apparent from the amended complaint that
Cohen and multiple defendants are citizens of Maryland. *See* ECF
No. 44 at 4.

F.3D 101, 103 (4th Cir. 2011).  Because the Court does not have
jurisdiction over the claims relating to the Delaware
receivership, the other federal claims are without merit, and
there is no basis for diversity jurisdiction, the Court will not
exercise supplemental jurisdiction over the state law claims.
*See Morrison v. Holding*, 539 F. App'x. 272, 273 (4th Cir. 2013)
(*per curium*) ("[B]ecause we conclude that [the plaintiff's]
remaining claims are meritless, supplemental jurisdiction over
his state law claims is not warranted."); *see also United Mine
Workers of Am. v. Gibbs,* 383 U.S. 715, 726 (1966) ("[When]
federal claims are dismissed before trial, . . . state claims
should be dismissed as well.").

 F. The Defendants' Motion for Sanctions

 Eighteen of the Defendants filed a joint motion for
sanctions, arguing that the case should be dismissed because of
the evidence that Cohen has threatened some Defendants.[25]  ECF
No. 75.  Because the Court is dismissing the case for lack of
subject matter jurisdiction, and the Defendants requested no
other relief other than a dismissal, the Court will deny the
motion for sanctions as moot.

 G. Cohen's Motion to Stay Civil Proceedings

---

[25] This information was obtained through Cohen's criminal trial,
and the decision of this Court to detain him pending trial.  *See*
ECF No. 75 at 5-6.

On September 9, 2014, after the briefing on all the previous motions had lapsed, Cohen filed a motion to stay the proceedings because he is being detained pending his criminal trial.  ECF No. 101.  On January 20, 2015, Cohen filed correspondence with the Court requesting a scheduling order. ECF No. 112.  On January 28, 2015, the INS Defendants wrote to the Court to respond to Cohen's request.  ECF No. 113.  They noted that Cohen's request for a scheduling order made his motion to stay moot.  *Id*.

In *Cohen v. Bankers Standard Insurance Corporation*, No. 14-cv-0313 (D. Md.), Judge Motz denied a virtually identical motion by Cohen to stay the proceedings.  *See* ECF No. 110-1.  Moreover, the Court has already concluded that the remaining claims should be dismissed for lack of jurisdiction and Cohen filed his motion to stay after responses to the various motions to dismiss were due.  The Court's determinations and Cohen's letter render his motion to stay moot.

III. Conclusion

For the reasons stated above, the motions to dismiss the amended complaint will be granted because the Court lacks subject matter jurisdiction.   All other pending motions will be denied.

_2/25/15_
Date

William D. Quarles, Jr.
United States District Judge